# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

OTHMAN ARJOUAN,

    Plaintiff/Petitioner,

v.                                                        No. 17-CV-782 MCA/WPL

LATIFA BINT-ALL AL-GABRY
CABRÉ,

    Defendant/Respondent.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** is before the Court on three motions: Petitioner's *First Amended Ex Parte Motion Under the Hague Convention for Entry of a TRO [Temporary Restraining Order], Seeking Physical Custody of Child, and Scheduling of an Expedited Hearing; and Federal Rule 65(b) Certificate of Counsel* [Doc. 7]; *Respondent's Verified Motion to Dismiss all Actions in Petitioner's Pleadings of July 31, 2017 and August 1, 2017 Pursuant to Rule 12(b)(6), or in the Alternative, Motion for Definite Statement pursuant to Rule 12(e), or Motion to Strike Pursuant to Rule 12(f)* [Doc. 17]; and *Petitioner's First Motion for Leave of Court to Amend the Verified Petition for Return of Child to Plaintiff/Petitioner in Denmark, Including Provisional Orders, and Ex Parte Temporary Restraining Order, Seeking Physical Custody and an Expedited Hearing* [Doc. 24]. The Court has considered the submissions, the relevant law, and is otherwise fully advised in the premises. Further, based on the Court's rulings on the above three motions, the Court finds as moot Father's *Ex Parte Motion under The Hague Convention*

1

*for Entry of a TRO, Seeking Physical Custody of Child, and Scheduling of an Expedited Hearing; and Federal Rule 65(b) Certificate of Counsel* [Doc. 2] and *Petitioner/Plaintiff's Motion for Leave to File a Sur-Reply to Respondent/Defendant's Reply to the Motion to Dismiss or Motion to Strike Pursuant to Rule 12(f).* [Doc. 31]

**BACKGROUND**

Petitioner Othman Arjouan (hereafter, Father) brings this action pursuant to the Convention on the Civil Aspects of International Child Abduction, *opened for signature* October 25, 1980, T.I.A.S. No. 11670, 1343 U.N.T.S. 22514 (hereafter, Hague Convention) and the International Child Abduction Remedies Act (ICARA), 22 U.S.C. §§ 9001-9011. Father filed a *Verified Petition for Return of Child to Plaintiff/Petitioner in Mexico, Including Provisional Orders, and Ex Parte Temporary Restraining Order, Seeking Physical Custody and an Expedited Hearing* on July 31, 2017.[1] [Doc. 1] Generally, Father alleges that he and Respondent, Latifa Cabré (hereafter, Mother) are divorced and have a six year old child (hereafter, Child) who was born in Denmark. [Doc. 1, p. 3] He alleges that he and Mother have joint custody of Child under Danish law and that, through May of 2015, Child was a habitual resident of Denmark and Father was exercising his custody rights to Child. [Doc. 1, pp. 3, 6] In May of 2015, Mother told Father she had a medical appointment in the United States and obtained Father's permission to bring the Child with her to the United States for one month. However, Mother never returned to Denmark. [Doc. 1, p. 4] Over the next few months, Mother

---

[1] Over the course of these proceedings it has become clear that Father's reference to Mexico in his title and elsewhere in the *Petition* is an error, and Father requests Child's return to Denmark. [Doc. 24-1]

stopped communicating with Father and ended communication between Father and Child. [Doc. 1, p. 4] Father realized Mother did not intend to return with Child and, in April of 2016,[2] Father filed an application with the Central Authority in Denmark for Child's return. [Doc. 1, p. 6]

The same day Father filed his *Petition* in this Court, he filed an *Ex Parte Motion under The Hague Convention for Entry of a TRO, Seeking Physical Custody of Child, and Scheduling of an Expedited Hearing; and Federal Rule 65(b) Certificate of Counsel*. [Doc. 2] Therein Father argued that, because Mother allegedly abducted the Child, there was an obvious risk that she would "further secret the [C]hild and herself" and that she would "refuse to appear before the Court to prevent her own return to Denmark with the Child." [Doc. 2, p. 2] Given this risk, Father sought the TRO *ex parte* so that Mother would not have the opportunity to hide from him and the Court. [Doc. 2, pp. 1-2] Father sought: an *ex parte* order prohibiting Mother or anyone acting in concert with her from removing Child from the jurisdiction of the Court pending the Court's determination of the merits of the case; for the Court to allow Mother to return to Denmark immediately with the Child if she so desired; and for the Court to set "an expedited preliminary injunction hearing on the merits of the Verified Complaint." [Doc. 2, p. 3]

---

[2] On one page of the *Petition*, Father states he filed the application on February 4, 2016 [Doc. 1, p. 4], but on another page, he states he filed the *Petition* on April 2, 2016 [Doc. 1, p. 6]. The actual application is dated "2/4-2016" [Doc. 1-4, p. 12] which, in keeping with Danish dating conventions, would be April 2, 2016. https://en.wikipedia.org/wiki/Date_and_time_notation_in_Denmark. In either event, as pleaded, the application was filed less than one year from the date that Mother took Child to the United States.

Upon receipt and review of Father's *Petition* and *Motion for TRO* the Court held an *ex parte* status conference on August 1, 2017, at which the Court requested additional documents from Father demonstrating custody and a copy of Mother and Father's divorce decree. Father's attorney agreed to provide such documents, but did not do so. Instead, Father served Mother on August 10, 2017. [Doc. 10]

Mother obtained counsel who entered an appearance [Doc. 12] and filed, on August 31, 2017, a *Verified Motion to Dismiss all Actions in Petitioner's Pleadings of July 31, 2017 and August 1, 2017 Pursuant to Rule 12(b)(6), or in the Alternative, Motion for Definite Statement Pursuant to Rule 12(e), or Motion to Strike Pursuant to Rule 12(f)*. [Doc. 17] Mother attached numerous documents to her *Motion to Dismiss* and asked that the case be dismissed on the basis of the documents. [Doc. 17, ¶¶ 19, 25, pp. 13-14] Such documents include, *inter alia*: a *Petition for Order of Protection from Domestic Abuse* which Mother filed in the First Judicial District Court of New Mexico on August 7, 2015, [Doc. 17, pp. 16-21] and the *Default Order of Protection* issued on October 6, 2015 [Doc. 17, p. 51]; Mother's *Petition to Establish Parentage, Determine Custody and Timesharing, and Assess Child Support* [Doc. 17, pp. 29-36], filed on February 15, 2016 in the First Judicial District Court of New Mexico, and an *Order of Sole Custody* dated June 15, 2016, granting her sole custody of Child [Doc. 17, pp. 74-75], also issued by the First Judicial District Court; the parties' *Divorce Decree* [Doc. 17, p. 40]; and a *Refusal of application for temporary custody* issued by the Danish State administration on July 24, 2016, in which the administration declined to give Father temporary custody while he filed for sole custody of the Child [Doc. 17, pp. 43-50]. In

addition, due to errors in Father's *Petition* and based on the documents provided by Mother, Mother sought, in the alternative to dismissal, either an order for more definite statement or an order striking the pleadings. [Doc. 17, pp. 13-14]

Father responded to the *Motion to Dismiss* raising several arguments, including an objection to the Court's consideration of the documents Mother attached to her *Motion to Dismiss* because the Court must determine the "sufficiency of a complaint . . . on its contents alone." [Doc. 25, p. 3] Briefing was complete on Mother's *Motion to Dismiss* on November 1, 2017. [Doc. 27] Thereafter, Father filed a *Motion for Leave to File a Sur-Reply* pertaining to the *Motion to Dismiss* [Doc. 28], which the Court denied without prejudice [Doc. 29] and which Father refiled, in accordance with the Court's instructions, on November 15, 2017 [Doc. 31]. Mother has not yet responded to the *Motion for Leave to File a Sur-Reply*.

On October 12, 2017, Father moved for leave to amend his *Petition*. [Doc. 24] Father sought to correct typographical and citation errors. Although Mother represented to Father that she did not concur in the filing of the *Motion for Leave to Amend* [Doc. 24, p. 1], she failed to respond in opposition to the *Motion*. [Doc. 26]

**ANALYSIS**

***Amended Ex Parte Motion for Entry of a Temporary Restraining Order* [Doc. 7]**

On July 31, 2017, Father filed an *Ex Parte Motion under The Hague Convention for Entry of a TRO, Seeking Physical Custody of Child, and Scheduling of an Expedited Hearing; and Federal Rule 65(b) Certificate of Counsel*. [Doc. 2] The next day, Father filed his <u>First Amended</u> *Ex Parte Motion under the Hague Convention for Entry of a*

*TRO, Seeking Physical Custody of Child, and Scheduling of an Expedited Hearing; and Federal Rule 65(b) Certificate of Counsel.*[3]  [Doc. 7]  The filing of the *Amended Motion* makes the original *Motion* moot, and therefore the Court finds Document 2 moot.

Within Father's *First Amended Ex Parte Motion for Entry of TRO* [Doc. 7], Father states that *ex parte* injunctive relief prohibiting Mother or anyone acting in concert with Mother from removing Child from New Mexico is necessary to prevent irreparable harm to Father.  [Doc. 7, pp. 1-3]  Father states that "if notice . . . was provided, there exists the possibility that Ms. Cabré would further secret both herself and the Child from both Petitioner and this Court."  [Doc. 7, p. 2]  However, after filing this *Amended Motion* and before submitting the additional documentation requested by the Court, Father served Mother [Doc. 10], and Mother filed a responsive pleading [Doc. 17].  This demonstrates that the basis for the requested relief, i.e. the fear that Mother would secret herself and the Child, did not come to pass, making the relief requested unnecessary.  Mother is already subject to the authority of the Court and potential penalties, up to and including entry of default judgment, if she fails to participate in the Court proceedings.

Father also requested that the Court "[a]llow Petitioner and the Child, along with Respondent, [if] she so desires, to return to Denmark immediately following a preliminary hearing on this Motion for an *ex parte* TRO."  The parties are advised that, consistent with the Hague Convention, nothing about the pendency of this case prevents Mother from voluntarily returning to Denmark with the Child so that Denmark may make

---

[3] At the request of the Court, Father corrected the certificate of service to state that Mother had not yet been served.

6

the custody determination. Hague Convention, art. 7(a) (requiring Central Authorities to take all appropriate measures "to secure the voluntary return of the child or to bring about an amicable resolution of the issues").

Father also requested the Court to schedule an expedited preliminary injunction hearing on the merits of the *Petition* and for the Court to order Mother to show cause why the Child should not be returned to Denmark. [Doc. 7, p. 3] However, the Court, having considered the pending motions, denies this request as it will set this matter for a hearing on the merits of Father's *Petition* in a scheduling order entered concurrent with this *Memorandum Opinion and Order*.[4]

Accordingly, for the reasons set forth above, the Court **DENIES** Father's *First Amended Ex Parte Motion under the Hague Convention for Entry of a TRO, Seeking Physical Custody of Child, and Scheduling of an Expedited Hearing; and Federal Rule 65(b) Certificate of Counsel*. [Doc. 7].

### *Motion to Dismiss* [Doc. 17]

"If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). If the Court converts a motion

---

[4] The Hague Convention requires the judicial or administrative authorities to act expeditiously in proceedings for the return of a child. Hague Convention, art. 10. Where a judicial authority has not reached a decision within six weeks of the date of commencement of the proceedings, the requesting State may inquire into the reason for delay. Hague Convention, art. 11. This case has been pending longer than six weeks, and, while no request for explanation has been submitted to the Court, the Court notes for the record that the pending motions and Father's request for time to obtain documents have caused this case to take longer than six weeks to process. As demonstrated herein, the Court is moving this case toward an expeditious resolution.

to dismiss into a motion for summary judgment, "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." *Id.* "[C]ourts have broad discretion in determining whether or not to accept materials beyond the pleadings. . . . Reversible error may occur, however, if the district court considers matters outside the pleadings but fails to convert the motion to dismiss into a motion for summary judgment." *Lowe v. Town of Fairland, Oklahoma*, 143 F.3d 1378, 1381 (10th Cir. 1998) (internal citations omitted).

Father asks the Court to not consider the attachments to the *Motion to Dismiss*. Mother summarily contends that the Court should not consider Father's request, however, Mother offers no explanation or argument for this position. [Doc. 27, p. 9]

In exercising its discretion, the Court declines to consider the documents attached to the *Motion to Dismiss* or to any other filings outside of the *Petition* in ruling on the *Motion to Dismiss*. The Court does so because, even if the Court were to convert the motion into a motion for summary judgment, after allowing notice as required by Federal Rule of Civil Procedure 12(d), and then to consider the documents, there would still be genuine issues of material fact precluding entry of judgment. Thus it would be futile to convert the *Motion* and consider the documents at this point in time. One such disputed issue is whether Father regularly exercised his custody rights prior to Mother removing Child.[5] [Doc. 17, p. 34 (Mother's statement that father had very little contact with Child

---

[5] In order to demonstrate a *prima facie* case for relief under the Hague Convention, the petition must show: "(1) the child was habitually resident in a given state at the time of the removal or retention; (2) the removal or retention was in breach of petitioner's custody rights under the laws of that state; and (3) *petitioner was exercising those rights*

8

throughout Child's life); Doc. 17, p. 44 (Father's statement that he was in contact with Child 2-3 times a week prior to Child's removal to the United States)]  Another such issue is the status of the action before the Danish Court, which must be shown by evidence, preferably by documentary evidence.[6]  From the documents submitted to the Court, the Danish State administration, on July 24, 2016, declined to award temporary custody to Father pending Father's application to cancel joint custody of Child, "plac[ing] decisive emphasis on that [Child] has already been abroad, USA for about 10 months." [Doc. 17, pp. 43-44]  Father represents that he has appealed this determination and that the Danish Appeals Court is waiting for Mother to give testimony before the appeal is resolved [Doc. 25, p. 9], however he relies solely on affidavits and not on documents he filed with the Danish Appeals Court or issued by the Court.  In order for the Court to determine whether Child should be returned, despite the Danish State administration's stated reason for refusing to grant Father temporary custody, the Court needs a clear understanding of the proceedings in Denmark.[7]  Another disputed factual

---

*at the time of removal or retention.*" *Shealy v. Shealy*, 295 F.3d 1117, 1122 (10th Cir. 2002) (emphasis added).

[6] At a status conference the parties identified a dispute about the status of the proceeding in Denmark [Doc. 30, pp. 17-19] and thus the Court expressed the need for "documents that would address or verify that the matter is up on some sort of an appeal in Denmark or what that appeal is." [Doc. 30, p. 18] Even though the Court allowed Father one month or longer if necessary to produce such documents [Doc. 30, pp. 20-21], he has yet to provide any such documents to the Court, instead relying on affidavits from Father and his attorney in Denmark. [Doc. 25-2; Doc. 25-4]

[7] *See* Hague Convention, art. 15 ("The judicial or administrative authorities of a Contracting State may, prior to the making of an order for the return of the child, request that the applicant obtain from the authorities of the State of the habitual residence of the child a decision or other determination that the removal or retention was wrongful within

issue exists regarding the legal effect of the *Orders* issued by the First Judicial District Court in Santa Fe, because testimony will be required to determine whether the Court had personal jurisdiction over Father and, if so, whether Father had notice of the proceedings, both of which Father contests.[8]  [Doc. 25, pp. 12-14]  There is also the issue of Mother's potential defense to the *Petition* on the grounds of abuse [Doc. 17, ¶¶ 24, 25], which will require testimony and evidence.  *See* Hague Convention, art. 13(b) (allowing a member state to decline to order the return of a child if "there is a grave risk that his or her return would expose the child to physical or psychological harm or otherwise place the child in an intolerable situation").  Furthermore, in deciding each of these issues, the Court will be required to make determinations regarding the credibility of the witnesses, making a hearing necessary.

Accordingly, given the numerous genuine issues of material fact presented in this case, it would be futile to convert the *Motion to Dismiss* into a motion for summary judgment.  The *Motion to Dismiss* cannot be granted based on the legal arguments made

---

the meaning of Article 3 of the Convention, where such a decision or determination may be obtained in that State.").

[8] *See Kulko v. Superior Court of California*, 436 U.S. 84, 92-93, 96-97 (1978) (holding that, pertaining to mother's petition for full custody and for child support, father lacked minimum contacts with California for California court to exercise personal jurisdiction over father who resided in New York and visited California twice more than 13 years earlier, including when he married the mother on a three-day military stopover); *see also* Hague Convention, art. 17 ("The sole fact that a decision relating to custody has been given in or is entitled to recognition in the requested State shall not be a ground for refusing to return a child under this Convention, but the judicial or administrative authorities of the requested State may take account of the reasons for that decision in applying this Convention."); *de Silva v. Pitts*, 481 F.3d 1279, 1284-85 (2007) ("A custody determination from a child's state of habitual residence takes priority over a similar decision from the requested state, here the United States.").

therein, as they rely on factual determinations,[9] and therefore the Court denies the *Motion to Dismiss*. [Doc. 17]

Father also filed *Petitioner/Plaintiff's Motion for Leave to file a Sur-Reply to Respondent/Defendant's Reply to the Motion to Dismiss or Motion to Strike Pursuant to Rule 12(f)*. [Doc. 31] Because the Court is denying the *Motion to Dismiss*, the Court finds the request to file a sur-reply [Doc. 31] moot.

### *Motion for Leave to Amend Petition* [Doc. 24]

On October 12, 2017, Father filed a *Motion for Leave of Court to Amend the Verified Petition*. [Doc. 24] Father seeks to correct errors in the original *Petition*, including incorrect references to Mexico and citations to the sections of the United States Code at which ICARA was formerly codified. [Doc. 24, pp. 2-3] In fact, these errors formed part of the basis for Mother's *Motion to Dismiss or in the Alternative Motion for Definite Statement or Motion to Strike.* [Doc. 17, ¶¶ 4, 5, 6, 8] While Mother, through counsel, represented to Father that she did not concur in the *Motion for Leave to Amend*, she failed to file any response to it. "The failure of a party to file and serve a response in opposition to a motion within the time prescribed for doing so constitutes consent to grant the motion." D.N.M. LR-Civ. 7.1(b). Further, the Court finds the *Motion for Leave to Amend* well-taken pursuant to Federal Rule of Civil Procedure 15(a)(2) ("The court should freely give leave when justice so requires."). *See also Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1204 (10th Cir. 2006) ("The purpose of the Rule is to provide litigants

---

[9] While Mother also asks for dismissal based on errors in the *Petition*, [Doc. 17, ¶ 4] Father has filed a *Motion for Leave of Court to Amend the Verified Petition* [Doc. 24], which, *infra*, the Court grants, making this ground for dismissal moot.

maximum opportunity for each claim to be decided on its merits rather than on procedural niceties." (Internal quotation marks and citation omitted.)). Mother has not stated any reason to disallow amendment. *See Foman v. Davis*, 371 U.S. 178, 182 (1962) (stating that "[i]n the absence of any apparent or declared reason . . . the leave sought should, as the rules require, be freely given" (internal quotation marks omitted)). The proposed amended *Petition* simply corrects errors regarding which Mother herself sought clarification or a more definite statement or, alternatively, upon which she sought dismissal. [Doc. 17, ¶¶ 4, 5, 6, 8] Thus, exercising the Court's discretion, the Court grants Father leave to amend his *Petition*. *See Minter*, 451 F.3d at 1204 (stating that the decision to grant leave to amend a complaint rests within the district court's discretion).

**CONCLUSION**

**WHEREFORE**:

1. The Court hereby **DENIES** Petitioner's <u>*First Amended* Ex Parte Motion Under the Hague Convention for Entry of a TRO, Seeking Physical Custody of Child, and Scheduling of an Expedited Hearing; and Federal Rule 65(b) Certificate of Counsel</u> [Doc. 7];

2. The Court hereby **DENIES** *Respondent's Verified Motion to Dismiss all Actions in Petitioner's Pleadings of July 31, 2017 and August 1, 2017 Pursuant to Rule 12(b)(6), or in the Alternative, Motion for Definite Statement pursuant to Rule 12(e), or Motion to Strike Pursuant to Rule 12(f)* [Doc. 17];

3. The Court hereby **GRANTS** *Petitioner's First Motion for Leave of Court to Amend the Verified Petition for Return of Child to Plaintiff/Petitioner in Denmark,*

12

*Including Provisional Orders, and Ex Parte Temporary Restraining Order, Seeking Physical Custody and an Expedited Hearing* [Doc. 24];

4. The Court hereby **FINDS MOOT** Father's *Ex Parte Motion under The Hague Convention for Entry of a TRO, Seeking Physical Custody of Child, and Scheduling of an Expedited Hearing; and Federal Rule 65(B) Certificate of Counsel* [Doc. 2]; and

5. The Court hereby **FINDS MOOT** *Petitioner/Plaintiff's Motion for Leave to File a Sur-Reply to Respondent/Defendant's Reply to the Motion to Dismiss or Motion to Strike Pursuant to Rule 12(f)* [Doc. 31].

**SO ORDERED** this 28th day of November, 2017 in Albuquerque, New Mexico.

_____
M. CHRISTINA ARMIJO
Chief United States District Judge